We will hear argument now in our last case of the day, Priority 1 v. CDK Global, and Mr. Castellano will hear from you. Good morning, Your Honors. Carmine Castellano for Plaintiff Appellant. Your Honors, in this case, the applicable contract provision has two parts. First, CDK is prohibited from using Priority 1's data to create revenue-generating services. Second, CDK is prohibited from using Priority 1's data to supply revenue-generating services. Because of where you were starting, can I ask a clarifying question? As I understand from your papers, the use theory here is that this new security-first program is designed to protect data, or at least it's sold as protecting data. If there were no data, there would be no program, and in that sense, it is using the data. That is correct, Your Honor. If that's the theory of use, what is the difference between the creating and the supplying? Sure. It's very similar, if not the same, as what happened in this Court's case of Dave & Buster's v. White Flint Mall. In that matter, Dave & Buster's opened a competing facility within the radius restriction of the lease, and what the Court held was that not only was it the opening of the facility, but the daily operation of the facility, which was the continued breach. But what did the contract in that case forbid? It forbid the opening, I believe, of a competing facility within the radius restriction, and what this Court held was that it wasn't only the opening of that competing facility, but its daily operation that constituted a continued breach, and thereby applying the continuing harm doctrine. So I get that, and this may be just a little thing I'm having trouble following, and I'll drop it in a second, but if that's your theory, I guess I still don't understand why the create v. supply thing makes any difference. One way or another, they started this program, and I gather, on the White Flint theory, every day that they invoice for it, they breach the contract anew. Absolutely, and this is what I want to explain. There's two different theories here. One, if you split up creation and supply, the creation of security first happened in 2015, and that seems like a long time ago. But I'm sorry. No, go ahead. So that's my question. They used the data to create it. Right. That seems like that was well outside the limitations period, right? The creation? The creation, yeah. Yes, but not if you apply the continuing harm doctrine. So if the creation... And that would have to be continuing harm, not continuing violation. Correct. So the continuing harm would have to apply. If you only look at one breach, which is the creation of the security first initiative, then you have to then apply the doctrine. If you split creation and supply, supply took place from 2015 through 2022 on a monthly basis. But the use was kind of leveraging the existence of the data to stand up this program that you said was protecting data, but then you supplied the data? Better language would have been relied on priorities data in order to create this revenue generating service. And all you need to look at... I'm sorry. I think you just said relied on to create. That's what you think supply means? No. No, Your Honor. That's what I'm... I'm having a hard time understanding. What do you think the word supply means? Posit there are like two plausible ways to think... Okay, let me finish before you start going on. Yes, Your Honor. So posit there are like two possible ways to think about supply, right? One way to think about the phrase is sort of to make something available, right? But the other is to sort of like to make additions or the like, right? And so one of those suggests that we're supplying by putting it in. Like you supply the data. Take AI as an example. I'm supplying the data to AI in order to let it learn. And the other way to think about supply is that I'm supplying something to a customer, right? But one's like the inclusion of data and one's the like something outward focusing. Why? I think I take your arguing for the second, but I'm not sure why that is as opposed to I'm sort of reading these two words really to sort of have a very similar meaning, right? Which is, you know, to create and supply to use the data to create and supply the service. Correct. So the use of the data by CDK at CDK relying on that data in order to create a service without the data, you're unable to create the service. I got that and supply the service, Your Honor, and supply it. So again, explain the supply. So yes, theory of the use. Just go back. Your theory of the use is they kind of relied on the data to stand up this program because it allowed them to say this was for protecting data. That just sounds like your theory of use is about creating the program. In what sense is your theory of use about using data to supply? You're using the data to supply services. Absolutely, Your Honor. So the creation of this initiative took place in 2015. You have to implement it each month. So in the record. So each month they have to once again supply the so-called security services and secure integration, which is why our third-party vendors were charged each month. And there's an Excel spreadsheet in the record at 3068, which comes from CDK's files, which shows what they charged all of our vendors each month from 2015 through 2022. And they charged for the supply of the enhanced security services. And without our data, there was no need to secure the integration. Okay. So basically each month they are once again saying this program is here to protect data. And in that sense they are using the data. Correct. And we contract this on a monthly basis by vendor, by priority one store in a CDK spreadsheet, which is in the record at 3068. They were charging for something. And what they're charging for is the implementation of the security first program. As they say in their papers, they had additional staff. There were new technological tools that they used to secure integration. And so they charged on a monthly basis all of our third-party vendors in a seven-year period, which can be tracked in violation of the contract. Can I ask a different question? So you seem to assume that this sort of continuing harm doctrine, to the extent it's a doctrine, applies to contract claims. I read the highest court of Maryland in Kane to at least strongly suggest that that's not true. Can you help me understand why I should ignore Kane and even sort of reach these questions as opposed to simply taking Kane and making my best eerie guess that the highest court of Maryland would not sort of apply this doctrine in the contract breach case at all? Absolutely, Your Honor. Again, in Dave & Buster's v. White Flint Mall, this court did just that. It applied to continuing... So I called Dave & Buster's, and the only thing this court says in that very brief unpublished opinion is that the contract barred them from operating a facility. And that strikes me as pretty obvious. Every single day the White Flint location is open is a new breach, because the breach is operating. So that doesn't seem... It's not continuing. That's literally every single day you open the competing store is a new violation of a contract that forbids you from operating a competing... So that doesn't seem to help you. In the same way that our contract forbids... It's also before Kane, right? So to the extent you think the best authority you have to ignore the highest court of Maryland is an unpublished 4th Circuit case that came out before the highest court of Maryland, do you have another argument, or do you just want me to rely on that? I have Chevron. And in Chevron the doctrine was also applied in a contract case that was also statutory violations. I thought that was the continuing breach theory. Is part of what's going on here that at least in most states continuing harm doctrine and continuing breach doctrine are two different things. And I thought it was pretty clear that Maryland in the Singer case had adopted continuing breach. Continuing harm is different. Tell me if there's a difference between those two doctrines as they apply to this case. There are. If there is one breach, which is the creation of the Security First initiative in 2015, then continuing harm doctrine would apply. If there's... If the applicable contract provision is split between the creation of Security First in 2015 and its continued operation on a monthly basis, the supply of those services and the charging for those services, then Singer applies and you have multiple breaches that restart the statute of limitations. So can I start... You cite the court's decision in Singer as if it's the highest court of Maryland. It is not. So despite your efforts to suggest it's the highest court of Maryland, it's not. It's an appellate court. And it predates Kain. So can I come back to the question and I'll give one last chance and then you can move on to other things if you're interested. The court in Kain pretty strongly over a, you might say, very persuasive dissent tells us that Maryland doesn't apply the continuing harm doctrine in contract cases. And so you've cited a district court case from 2015, an unpublished case from 2015, and a lower court decision to say that I should ignore Kain. Is there anything else? Do you want to try to distinguish it or do you just want me to make my best eerie guess that those other decisions better reflect the views of the Supreme Court of Maryland? Well, in Kain, the Supreme Court did not come out with a rule that the continuing harm doctrine could not be applied in a contract case. Sure, but it also definitely doesn't say that it can. Correct. So if it can or it can't, it's an open question, I believe. I'm so sorry. I am really stuck on why it matters in Maryland whether continuing harm doctrine applies because I think it matters in most states because continuing breach theory, under a continuing breach theory, you would be able to go back three years in time because it would start a new statute of limitations. Your most recent invoicing starts a new statute of limitations and so you can go back three years. In most states, continuing harm doctrine is different. The statute of limitations are told, the accrual date of your claim is postponed, and when you do sue, you can go all the way back for damages. But it looks to me from Kain, like in Maryland, it doesn't make any difference. Either way, you can only go back three years. I think that's correct. Under either theory, you can only go back three years from when you filed. Anyway, even assuming continuing harm applied to contracts in Maryland, your continuing harm is the continuing billing. That's the only thing you're I don't know why you are bothering to argue that the continuing harm doctrine applies because I don't see what you get under it that you're not already getting or not getting under the continuing breach theory. I agree with Your Honor. I agree. That was my first, the supply, the creation and the supply. And if you continue to supply, it's excessive breaches under Singer, which restarts the statute of limitations. I agree with Your Honor. What the district court judge did was hold there's a single breach in 2015. So under that, in the alternative, my argument would be under... Okay. Okay. So if you have lost on continuing breach, then you want to be able to... That's correct. My argument is that it's a successive breach every month, which can be tracked in Joint Appendix 3068. And the other, the last point I want to make, if you want to understand the intent of the applicable language in this case, you just need to look at the very detailed affidavit from Jane Copeland, who drafted it, who was Priority One's DMS consultant who has over 40 years experience. My time has expired, Your Honors. Thank you. Thank you. We've got time on rebuttal.  Good morning, and may it please the Court. Michael Skodro for the Appellee CDK Global. I think it's important to draw a distinction. In talking, the early questions from the Court involved how this... A little bit about how this works. So 3PA is the system of integration. That had been around for a long time. I believe it's since 2000. And it's an option, was an option for vendors to sign up for, and it would allow the vendor to seamlessly connect with clients, the DMS that are owned by, or used by, rather, clients of CDK. What changed in 2014 through 2016, as alleged and as the evidence showed in its Security First? Well, what is Security First? Well, both parties describe it the same way. Namely, Security First was an initiative to exclude anyone who wasn't using 3PA. Again, 3PA had existed. They'd been charging vendors to use it. If you're a member of 3PA, what this changed with Security First was the prices went up in connection with the heightened security. What was the form heightened security took functionally? It was ensuring that everyone accessing a CDK DMS was doing so through 3PA. So that is the change. And what's critical here is that ended for this user, Priority 1, just a couple of weeks after they complained about it in November of 2016. So at that point, their data was no longer ever again subject to this requirement that only 3PA vendors, those who are using members of the 3PA system, could gain access to their system. That began and ended in 2016. Now, they've claimed that there is an ongoing ill effect of that, namely that vendors that use 3PA are being charged more than they were in 2005 and 2010, 2015, by virtue of Security First. Now, it is unclear how that is the use of Priority 1's ongoing use of Priority 1's data to supply a service. But even if it were, and this now goes, we don't need to get this far, but if we get into whether or not there's a continuing breach, this case is Curry, another unpublished decision from this court, or it's the published decision from... Can I ask what your understanding of Maryland... Across the country, sometimes the words continuing harm and continuing breach are used to mean the same thing, and sometimes they're used to mean a different thing. I take Maryland to have only adopted what I would personally call a continuing breach, but what Maryland says is the continuing harm doctrine permits recovery by an injured party caused by a tort feesers, sequential breaches of an ongoing duty, imposing a new limitation period for each breach. This is the continuing harm doctrine, even though they call it continuing harm, it's really a continuing breach doctrine. Why should we think that applies to contract claims at all? I mean, Cain seems to suggest that it would not and does not. The lower court case in Singer maybe in some sense could be read in contravention of that, but it's an earlier lower court decision than Cain. Can you help me understand how to... Am I thinking about this the right way and piece this together? Yeah, let me give you my best answer to that, because I think it is a bit confused in the case law, frankly. I think that the terms, as we point out in our brief, have been used interchangeably and somewhat confusingly in some of the case law. I think that Your Honor is right, as we say in our brief, that in the contract context, the easiest way to reconcile the different cases in Maryland appears to be the understanding that the continuing harm in a breach of contract context is, in fact, the ongoing or repeated breach. I think that goes to the quote Your Honor just read from their case law. I think that there's a strong argument to be made, frankly, that the language in Cain in foreclosing, and again, definitive Maryland decision in 2021, in foreclosing the use of continuing harm in the contract context, or at least suggesting that case law to date does not embrace the use of continuing harm in the contract context, that that applies equally to continuing breach. Now, if the follow-up to that would then be, and taking the remainder of Your Honor's question, what about Singer? I think there are two answers. Singer being a lower court decision that predates Cain is part of the answer. I think the remainder of the answer, though, is Singer is a very different decision. Remember, Singer was a case, and I can change one fact in Singer to make it look more like our case, and I think it comes out very differently. Singer was a case where there were repeated, unpredicted, of different lengths and different times, electrical shortages by the utility. There was not in that case, so each one of those was its own act of, out of the blue, we have this breach of the duty to provide electrical current. If they had said at the outset, every week at 2 o'clock, we're going to cut power for 15 minutes, even if that were... But in that downstream, I totally get that distinction, but that distinction is to say, if you adopt the continuing breach theory for contract, then you should only adopt it per Williston and New York's sort of majority rule, which is that there have to be successive distinct breaches. But that's downstream of the question of whether it applies to contracts at all. Completely agree. So I would say my first answer is, Kane should be read, in terms of making an eerie guess, the sort of respectful decision, the one that does not go further than the Maryland High Court, would be to say, look, the Maryland High Court, or the Maryland courts conflate these doctrines in the contract context, and Kane has suggested that these combined doctrines apply, although it referred to it as harm in that case, apply in a limited set of basically property-related cases. That would be our first argument, and I think that's a full stop. If the court were to disagree with that and say, we do think that Singer is something that needs to be accounted for, and there's room in Maryland law, again, we would disagree, there's room in Maryland law for something where you have successive breaches of contract, a la Singer, we would say that still has nothing to do with this case. Putting aside the fact that the misconduct alleged here ended in 2016. Can I ask a question? If I read Kane as expansively as it might be read, would that affect the scenario where I'm a buyer of coffee beans and I've got a three-year contract and you fail to supply me the coffee beans for three months, and so I then sue you and recover, and you then start supplying beans again, and then outside the statute you stop supplying beans for a second time? Can I still sue you a second time? It's not a one contract, one suit idea, right? Right. And I think that's where, I think if Kane is read at its most expansive, it may well preclude that. The reason I'm adding Singer is I think it, that would be the most expansive reading, but if you have a reading that contemplates, that leaves some room for what your honor describes, I think your honor is describing the Singer scenario, and I think Kane can easily be read to allow that to persist, that claim to persist, without doing violence to that, while still eliminating both harm and breach as plaintiff is using those terms in this case. I think in this case, so if we blow past everything and we say, look, yes, they're still using your data, even though you went on the do not disturb list as of November of 2016, even though immediately thereafter a non-3PA member vendor started using, again, integrating and taking data from the priority one DMSs, someone who was now free to do so yet again, because we had put them on the do not disturb list, even if, that was called Authenticom, even if we put all of that to one side and we say, you know what, there's a, let's imagine, there's a contract provision that says, you should not increase, you've been charging for decades prices, or 15 years at that point, you've been charging for 3PA membership for vendors who opt into 3PA. Let's say there were a contract provision that said, you shall not ever increase those prices, because that's the complaint, that they went up in 2016, they knew they went up in 2016, they don't claim there's been changes since then that they're alleging are independent problems. Even if that were the case, then, and even if we think Cain should be sort of disregarded and we can look to a full bore kind of continuing breach, continuing harm scenario, then that this is Curry, or general insurance, this court's decision from 2018, then it's a case where you have, and all of the district court cases we cite on pages 32 and 33 of our brief interpreting Maryland law, then it's a case where you have either a monthly underpayment or a monthly overcharge to a would-be plaintiff, and they claim that with each monthly overpayment or undercharge, they're entitled, that sort of re-ups the limitations period, even though there was an announcement at the outset, or it was clear at the outset, that this was going to be happening every month. Their CFO testified, they recognized the increases for 3PA membership in 2016. And so even if we go past all of what we've been talking about, this is still just then a Curry case, it's still just a general insurance case, and not surprisingly, the two cases on which the district court most heavily relied for its decision, and I should add, its decision is totally correct, and it didn't even need to go to the next step, which is to say, and by the way, there is no continuing breach because we took you off the do not, we put you on the do not disturb list, and therefore we're not using your data for anything after that point in time. So there are multiple layers here, but the district courts would be the first, Kane would be an independent ground to do it, but even if we go past all of that, we're in a world where this is no different than all of the many cases, the ERISA cases, the district court cases, Curry, general insurance, where it's made known that you're going to be paying more per month, and you may think that is a violation of a contract, but you knew it when it was announced that would be true, and that, under those circumstances, you're not given the benefit of either of these continuing doctrines. So part of my challenge here is I continue to struggle with what exactly their theory of breach under supply is, but this is a hypo I've just been mulling, and I apologize if there's an easy answer that I just don't know. So, and I realize this is going to be about patent law, not about Maryland law, but I'm just trying to understand how this would work in context that seems sort of like this one, right? So imagine that a small pharma company thinks that Pfizer used some of their patented technology to create the COVID vaccine. Let's get away with discovery rule. Let's posit that the minute the Pfizer vaccine goes on sale, this small company is aware of this fact, right? And so Pfizer sells the COVID vaccine, and they sell it for years and years and years and years and years. Like, do you know what the answer would be? Like, is every single active, under that circumstance, every single sale of the COVID vaccine patent infringement? And does that mean that you could not just sue them for future sales, but you could actually go all the way back to the first sale of the COVID vaccine? Do you have any idea how patent law would analyze that? I don't, Your Honor. It's a great question. But I'm just trying to think of other analogous situations of a claim that would look kind of like this. Right, right. And to be sure, as Cain itself would recognize, if that were, I mean, I think the question is, is that better analogized as the sort of trespass, the classic continuing toward property claim that Cain acknowledges? Is it closer to that? Or is it closer to a circumstance where you have monthly payments, and you well know they're going to be less than you'd like, or you're going to have to pay more than you'd like, and you don't do anything about it for, in this case, four years? And I think that would be the analogy, but I can't say how courts have come out on the answer to Your Honor's question on that. Can I ask you a somewhat far afield question? But what happened with the unjust enrichment claim in this case? So my understanding, the unjust enrichment claim is still, I want to make sure I answer Your Honor's question to be correct. Let me, my only question is, I didn't see the district court talking about it anywhere. Is the district court assuming that the same limitations period analysis would apply to the unjust enrichment claim, or did it just fall through the cracks? What happened? I think that's been the parties' mutual understanding, Your Honor. I'm sorry, which one? Oh, that's a good point. The former, which is that the court essentially understood that it was disposing of both on the same theory, and we certainly would agree that any of the theories we've talked about today would dispose of it. And is there, just so I'm clear, I think I know the answer, because Maryland has, the statute of limitations that applies to the contract claim is a generally applicable Maryland statute of limitations that it presumptively applies to everything? That's correct, Your Honor. So there's no reason or even particularly plausible argument that unjust enrichment has a different statute of limitations? No, that's exactly right, Your Honor. In fact, so we cite the Cane decision mentions that unjust enrichment in Maryland is also subject to the same three-year limitations period. So if you went back to the district court and hypothetically had said, like, I noticed that you didn't dispose of the unjust enrichment claim in the sense that you don't literally explain why you're dismissing it, you expect the district court judge would have looked at you and said, really? I read an entire opinion explaining why. Yes, that is what I anticipate would be the reaction I would imagine. If the court has no further questions. Thank you. Thank you, Your Honors. Your Honors, very briefly, just a couple factual points. Prior to the introduction of Security First, Priority One was unaware of any charges, any integration charges. It's when Security First initiative was first introduced and all these charges came into play and it was a big industry outcry and statutes were enacted and things like that. That's when we became aware of it. So prior to that time, we were not aware of any integration fees. The other issue is that simply because one vendor was put on a Do Not Disturb list, that's not our only theory of breach. We were continued to be charged from 2015 through 2022, or I'm sorry, our third party vendors continued to be charged. And that is also a breach. We also were never told. You agree, though, that you knew about that as of when? 2016. That's correct. And are you suggesting that there's something different that happened after 2016, or is it just the same, in your view, the same breach that's occurring every time you get a bill? We don't receive the bill. The bill gets given to our vendor. Not you get a bill. Generally, yes, but the amounts could be different. Yeah, amounts are different, but it's the same. Generally speaking, yes, correct. And so again, each month, that is a breach, a successive breach, and when we file, we can't go back more than three years with respect to the damages. So it's not forever. It keeps the statute of limitations open, and when you file, you can go back only three years from when you file. If the court has no further questions for me. Thank you. We will come down in Greek Council, and I'll ask that court be adjourned for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Pamela A. Harris, Julius N. Richardson, Toby J. Heytens